**IN THE DISTRICT COURT OF THE UNITED STATES**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| Cathy D. Colebrooke, | ) | Civil Action No. 2:20-00397-RMG-MGB |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER AND** |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| T-Mobile USA, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Cathy D. Colebrooke ("Plaintiff"), through counsel, filed this lawsuit alleging: age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"); race discrimination in violation of Title VII of the Civil Rights Act ("Title VII") and 42 U.S.C. § 1981 ("Section 1981"); and retaliation in violation of the ADEA and Title VII. (Dkt. No. 1-1; Dkt. No. 8.) Plaintiff originally filed this action in the Charleston County Court of Common Pleas on December 23, 2019. (Dkt. No. 1; Dkt. No. 1-1.) The case was removed to federal court on January 31, 2020. (Dkt. No. 1.)

Defendant's Motion for Summary Judgment (Dkt. No. 36) and Motion to Strike (Dkt. No. 46) are currently before the Court. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration. For the reasons stated below, the undersigned denies Defendant's Motion to Strike (Dkt. No. 46) and recommends granting Defendant's Motion for Summary Judgment (Dkt. No. 36).

1

## FACTUAL SUMMARY

This civil action arises from Defendant's alleged discrimination and retaliation against Plaintiff, a former employee of Defendant. (Dkt. No. 1-1; Dkt. No. 8.) Plaintiff is an African American female over forty years old. (Dkt. No. 8 at 4.) She was hired by Defendant on November 6, 2012 as an entry level Customer Service and Sales Representative. (*Id*. at 5.) On September 15, 2013, she was promoted to Senior Analyst, Business Support. (*Id*; Dkt. No. 36 at 2.) She was terminated on April 2, 2019. (*Id*. at 4–5; Dkt. No. 36 at 9.)

Plaintiff alleges that she was denied training and development opportunities throughout her employment with Defendant. (*See generally* Dkt. No. 8.) She contends that she complained to management that she never would be promoted because she was "the wrong Age, Race, and Sex to be promoted." (*Id*. at 6–7, 10.) She further contends that Defendant treated her significantly different because of her age, race, sex, and sexual orientation, and that Defendant had numerous policies and procedures concerning discrimination and retaliation, which Defendant failed to follow. (*Id*. at 6–8.) More specifically, Plaintiff asserts that she "witnessed [her supervisor] provid[ing] support to all other members of the team except for her," that her supervisor refused to allow her to apply for a "stretch assignment"[1] that would develop her professionally, and that she was terminated shortly after complaining about her supervisor's conduct. (Dkt. No. 44 at 9–12.) Plaintiff alleges that Defendant's failure to professionally develop her was

---

[1] Plaintiff describes a "stretch assignment" as "a leadership role that you're given, but you're paid at the same rate of the role that you're in. And in that role, you're given mentors, and you're developed for the role that you're . . . trying out []. So you get to basically meet, you get to mingle, you get to grow relationships." (Dkt. No. 36-1 at 23.) Plaintiff also explains that "you had to get the permission of your immediate supervisor" before applying for this kind of assignment. (*Id*. at 25.)

discriminatory, and that her termination was discriminatory and retaliatory. (*See generally* Dkt. No. 8; Dkt. No. 44.)

## PROCEDURAL HISTORY

As noted, Plaintiff filed this action in the Charleston County Court of Common Pleas on December 23, 2019, (Dkt. No. 1-1), and the case was removed to federal court on January 31, 2020 (Dkt. No. 1). Plaintiff's original complaint brought claims for: age discrimination in violation of the ADEA (First Cause of Action); race discrimination in violation of Title VII and Section 1981 (Second Cause of Action); retaliation in violation of the ADEA and Title VII (Third Cause of Action); hostile work environment and breach of contract in violation of the ADEA and Title VII (Fourth Cause of Action); and sex discrimination in violation of Title VII (Fifth Cause of Action). (Dkt. No. 1-1.) Plaintiff subsequently amended her complaint to correct Defendant's name. (Dkt. No. 8.) On February 7, 2020, Defendant filed a Motion to Dismiss Plaintiff's Fourth and Fifth Causes of Action, along with its Answer to Plaintiff's Amended Complaint. (Dkt. No. 9; Dkt. No. 10.) On February 23, 2020, Plaintiff filed a Motion to Amend/Correct her Amended Complaint. (Dkt. No. 13.) On May 7, 2020, the Court denied Plaintiff's Motion to Amend/Correct and granted Defendant's Partial Motion to Dismiss. (Dkt. No. 30.)

As such, Plaintiff's remaining causes of action are:

- First Cause of Action for Age Discrimination in Violation of the ADEA;
- Second Cause of Action for Race Discrimination in Violation of Title VII and Section 1981; and
- Third Cause of Action for Retaliation in Violation of the ADEA and Title VII.

(Dkt. No. 8; Dkt. No. 30.)

Now before the Court is Defendant's Motion for Summary Judgment on all remaining causes of action, which was filed on September 29, 2020. (Dkt. No. 36.) After requesting and receiving an extension of time to respond, Plaintiff filed a Response in Opposition to Defendant's Motion for Summary Judgment on October 23, 2020. (Dkt. No. 44.) On October 30, 2020, Defendant filed its Reply to Plaintiff's Response in Opposition, along with a Motion to Strike Plaintiff's Affidavit. (Dkt. No. 46; Dkt. No. 47.) Plaintiff filed her Response in Opposition to Defendant's Motion to Strike on November 13, 2020, (Dkt. No. 48), and Defendant timely replied (Dkt. No. 49). Accordingly, the motions before the Court have been fully briefed and are ripe for disposition.

## DISCUSSION

### I.    Defendant's Motion to Strike

While a court may consider facts established through an affidavit in evaluating a motion for summary judgment, supporting and opposing affidavits must be based on personal knowledge and must set forth facts that would be admissible in evidence. Fed. R. Civ. P. 56(c)(4); *see also Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) ("Generally, an affidavit filed in opposition to a motion for summary judgment must present evidence in substantially the same form as if the affiant were testifying in court. Federal Rule of Civil Procedure 56(e) specifically requires that affidavits submitted on summary judgment contain admissible evidence and be based on personal knowledge.") Thus, a court generally may not consider statements in an affidavit that are hearsay, conclusory, and/or irrelevant absent a specific exception in the rules of evidence. *See id.* (finding that the district court properly disregarded those portions of the

4

affidavit that it deemed inadmissible in evaluating the defendant's motion for summary judgment).

In the instant case, Defendant argues that the Court should strike Exhibit 6 (Plaintiff's affidavit) to Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment in whole or in part because the document contains new or inconsistent statements, inadmissible hearsay, and speculation. (Dkt. No. 46 at 1.) Plaintiff counters that "[e]ach of the statements made by Plaintiff were in response to the Defendant's statements in their memorandum regarding the Plaintiff's employment and what happened to her while she was an employee." (Dkt. No. 48 at 5.) Plaintiff argues that "the affidavit is an actual clarification of the information in the Plaintiff's deposition" and that "it is based on personal knowledge." (*Id*. at 6.)

As a threshold issue, the undersigned notes that this affidavit was created after the close of discovery and that the undersigned therefore cannot consider statements therein that conflict with the affiant's prior deposition testimony.[2] *See Alba v. Merrill Lynch & Co.*, 198 F. App'x 288, 300 (4th Cir. 2006) ("It is well recognized that a plaintiff may not avoid summary judgment by submitting an affidavit that conflicts with earlier deposition testimony."). In addition, several of the statements in Plaintiff's affidavit are inadmissible hearsay and cannot be used as evidentiary support to defeat a summary judgment motion. *See*, *e.g.*, *Evans*, 80 F.3d at 962 (holding that summary judgment affidavits cannot be conclusory or based upon hearsay); *Md. Highways Contractors Ass'n, Inc. v. State of Md.*, 933 F.2d 1246, 1251 (4th Cir. 1991) ("[H]earsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment.").

---

[2] Although Plaintiff argues that her affidavit simply clarifies her deposition testimony, it is clear from the record that statements in her deposition directly conflict with her previous testimony. (*See* Dkt. No. 36-1; Dkt. No. 44-6; Dkt. No. 46 at 4–5.)

More specifically, Plaintiff attempts to introduce out of court statements supposedly made to her by Nick Kyger, Isha Lo, and Janique Prioleau through her affidavit. (Dkt. No. 44-6 at 1, 3.) Plaintiff offers certain of these out of court statements as true and does not point to an exception to the hearsay rule that would allow these statements as evidence admissible at trial. (*Id*.) As such, the statements are inadmissible hearsay that cannot be considered by the undersigned in ruling on Defendant's Motion for Summary Judgment. Fed. R. Evid. 801(c); *see, e.g.*, *LeBlanc v. Sunset Mgmt., Inc.*, No. 3:16-cv-577-SVH, 2017 WL 2974020, at *4 (D.S.C. July 12, 2017) (dismissing retaliation claim because there was no evidence plaintiffs' employer "was [] aware of their claims of sexual harassment" prior to plaintiffs' termination, stating "Plaintiffs attempt to create an issue of fact by submitting their own affidavits stating that Maas told them that he had informed [the employer] of their alleged complaints. However, such statements are inadmissible hearsay and cannot be used as evidentiary support to defeat a summary judgment motion."); *Sumter v. Jenny Craig, Inc.*, No. 3:14-cv-4460-CMC-SVH, 2016 WL 3397588, at *3 (D.S.C. June 21, 2016) ("Plaintiff's affidavits supporting her defamation claim contain hearsay statements that cannot be used as evidentiary support in opposition to summary judgment."); *Bronitsky v. Bladen Healthcare, LLC*, No. 7:12-cv-147-BO, 2013 WL 5327447, at *2 (E.D.N.C. Sept. 20, 2013) ("Plaintiff has presented no admissible evidence of the statements made by [defendant] to Dr. Block. Instead he attempts to rely on inadmissible hearsay. Plaintiff only cites his own testimony that Dr. Block told him that [defendant] told Dr. Block certain things about plaintiff. This is plainly inadmissible hearsay.")

As such, the undersigned agrees with Defendant that many of the statements in Exhibit 6 are improper under Federal Rule 56(c) and cannot be considered by the undersigned in evaluating Defendant's Motion for Summary Judgment. (*See supra* at 4–6.) Defendant is also correct that certain statements that Plaintiff makes in her affidavit are speculative or conclusory. (*See* Dkt. No. 46 at 6–7, citing to Dkt. No. 44-6.) Nonetheless, striking an affidavit is a drastic sanction that is inappropriate under the circumstances before this Court. *Graves v. Horry-Georgetown Technical College*, 512 F. Supp. 2d 413, 417 (D.S.C. 2007). The Court need not strike Plaintiff's affidavit (or any portions thereof), so long as it considers only those admissible statements that are not inconsistent with Plaintiff's prior testimony when evaluating Defendant's Motion for Summary Judgment.[3] *See Kitchens v. Boeing Co.*, No. 2:16-cv-3723-BHH-MGB, 2018 WL 4957375, at *2 (D.S.C. July 25, 2018), *adopted in part*, 2018 WL 4476124 (D.S.C. Sept. 19, 2018). Defendant's Motion to Strike Plaintiff's affidavit (Dkt. No. 46) is therefore denied.

## II.    Defendant's Motion for Summary Judgment

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ'g Co. v. Raleigh-Durham Airport*

---

[3] For clarity, any statements considered by the undersigned in evaluating Defendants' Motion for Summary Judgment are specifically cited to herein; any evidence not cited by the undersigned was not considered in reaching the recommendations below.

*Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"As the moving party, Defendant[] [is] required to identify those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which [it] believe[s] demonstrate the absence of genuine issues of material fact." *Perez v. Arnold Transportation*, No. 3:15-cv-3162-TLW, 2018 WL 2301850, at *3 (D.S.C. Feb. 12, 2018) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "As the nonmoving party, Plaintiff[] must then produce specific facts showing that there is a genuine issue for trial." *Id.* (citing *Celotex Corp.*, 477 U.S. at 317). "Plaintiff[] may not rest on mere allegations or denials; [he] must produce 'significant probative evidence tending to support the complaint.'" *Id.* (quoting *Anderson*, 477 U.S. at 248). In other words, "the nonmoving party must go beyond the facts alleged in the pleadings and instead rely upon affidavits, depositions, or other evidence to show a genuine issue for trial." *Crawford v. Newport News Indus. Corp.*, No. 4:14-cv-130, 2018 WL 4561671, at *2 (E.D. Va. Mar. 2, 2018) (citing *Celotex Corp.*, 477 U.S. at 317), *adopted in part*, 2018 WL 2943445 (E.D. Va. June 11, 2018), *appeal dismissed sub nom. Kershaw v. Newport News Indus. Corp.*, 2018 WL 8058614 (4th Cir. Oct. 25, 2018).

In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (quoting *Anderson*, 477 U.S. at 255); *see also Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir. 1990). Although the Court must "draw all justifiable inferences in favor of the nonmoving party, the nonmoving party must rely on more than conclusory allegations, mere speculation, the

building of one inference upon another, or the mere existence of a scintilla of evidence." *Sandlands C & D LLC v. County of Horry*, 737 F.3d 45, 54 (4th Cir. 2013) (citing *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

Here, Defendant claims that it is entitled to summary judgment on each of Plaintiff's causes of action because Plaintiff "has failed to establish a *prima facie* case for discrimination or retaliation, and, in any event, T-Mobile has shown legitimate, non-discriminatory and non-retaliatory reasons for all of its actions." (Dkt. No. 36 at 15.) For the reasons set forth below, the undersigned agrees that Defendant is entitled to summary judgement on all of Plaintiff's claims. The undersigned therefore recommends that Defendant's Motion for Summary Judgment (Dkt. No. 36) be granted and that this case be dismissed in full.

## A.    Discrimination in Violation of the ADEA, Title VII, and Section 1981

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Section 1981 states that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981. Title VII makes it "an unlawful employment practice for an employer to . . . discriminate against any individual

with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. . . ." 42 U.S.C. § 2000e-2(a). Plaintiff brings an age discrimination claim under the ADEA and race discrimination claims under Title VII and Section 1981. (Dkt. No. 8 at 10–13.)

When, as here, the plaintiff lacks direct evidence of discrimination, she must satisfy the three-step burden-shifting framework set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), to prevail on a claim under the ADEA, Title VII, or Section 1981.[4] *Jeffers v. Lafarge N. Am., Inc.*, 622 F. Supp. 2d 303, 315 (D.S.C. 2008) (ADEA context); *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 206 n.4 (4th Cir. 2019) (referencing *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005)) (Title VII context); *Bryant v. Bell Atl. Maryland, Inc.*, 288 F.3d 124, 133 (4th Cir. 2002) (extending Title VII requirements to § 1981 discrimination claim). Under the *McDonnell Douglas* paradigm, the plaintiff must first establish the elements of a *prima facie* discrimination claim.

With respect to her age discrimination claim, Plaintiff can establish a *prima facie* case by showing that: (1) she is at least 40; (2) she was performing her job to the legitimate expectations of her employer; (3) her employer took an adverse employment action against her; and (4) the adverse employment action occurred under circumstances that raise a reasonable inference of unlawful discrimination (*e.g.*, younger similarly-situated employees received more favorable treatment). *See Wakefield-Brace v.*

---

[4] Plaintiff has failed to present any convincing direct evidence of age or race discrimination. *See, e.g.*, *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006) (holding that direct evidence is "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision"); *see also Martin v. Alumax of S.C., Inc.*, 380 F. Supp. 2d 723, 728 (D.S.C. 2005) (noting that "statements by nondecisionmakers," and "statements by decisionmakers unrelated to the decisional process itself" do not constitute direct evidence). Accordingly, the undersigned analyzes Plaintiff's discrimination claims pursuant to the *McDonnell Douglas* pretext framework.

*Greenwood Sch. Dist. 50*, No. 8:16-cv-2750-MGL-KFM, 2017 WL 9286975, at *8 (D.S.C. May 25, 2017), *adopted*, 2017 WL 2569846 (D.S.C. June 14, 2017) (referencing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)). In short, the plaintiff must prove that age was the "but for" cause of the adverse action(s) at issue. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009); *see also Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 725 (4th Cir. 2019) (noting that "the employee must prove that the employer *would not have fired her* in the absence of age discrimination") (emphasis in original).

As for Plaintiff's race discrimination claims, Plaintiff can make a *prima facie* case by demonstrating: (1) membership in a protected class; (2) satisfactory work performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class, or some other evidence giving rise to an inference of unlawful discrimination.[5] *Ferguson v. Waffle House, Inc.*, 18 F. Supp. 3d 705, 719 (D.S.C. 2014); *see also Perkins*, 936 F.3d at 207 (referencing *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010)).

If the plaintiff can set forth the elements of a *prima facie* case of discrimination, the burden then shifts to the employer to show "a legitimate, nondiscriminatory reason" for the alleged adverse action(s). *Westmoreland*, 924 F.3d at 725. If the employer provides a legitimate, nondiscriminatory reason, the burden shifts back to the plaintiff "to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant-employer were not its true reasons, but were a pretext for discrimination" *See id.* at 726 (referencing *Tex. Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253–54

---

[5] "Under Title VII and either § 1981 or § 1983, the elements of the required *prima facie* case [for employment discrimination] are the same." *Gairola v. Commonwealth of Va. Dep't of Gen. Servs.*, 753 F.2d 1281 (4th Cir. 1985).

(1981)). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine*, 450 U.S. at 253.

Here, the undersigned finds that Plaintiff's discrimination claims fall short under the second, third, and fourth elements of her *prima facie* case.[6] With respect to the second prong, the plaintiff must demonstrate that she was performing her job duties at a level that met the employer's legitimate expectations at the time of the adverse employment action(s). *See Dinda v. CSC Gov't Sols., LLC*, No. 2:17-cv-03171-DCN-MGB, 2019 WL 4280370, at *7 (D.S.C. Mar. 21, 2019), *adopted*, 2019 WL 3244186 (D.S.C. July 19, 2019) (referencing *Miles v. Dell, Inc.*, 429 F.3d 480, 485 (4th Cir. 2005)); *Ferguson*, 18 F. Supp. 3d at 719 (D.S.C. 2014); *Perkins*, 936 F.3d at 207 (referencing *Coleman*, 626 F.3d at 190). In evaluating satisfactory job performance, it is well-established that the self-assessment of Plaintiff and the assessments of her coworkers are irrelevant to the analysis. *See, e.g.*, *King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003); *Stevens v. Del Webb Communities, Inc.*, 456 F. Supp. 2d 698, 729–30 (D.S.C. 2006). Instead, the court must look to the perception of the decisionmaker. *King*, 328 F.3d at 149; *see also Thompson v. Rock Hill Sch. Dist. III*, No. 0:13-cv-1889-JFA, 2014 WL 5369775, at *9 (D.S.C. Oct. 22, 2014) (noting that the decisionmaker's perception applies to discrimination claims under Title VII and the ADEA). The term "legitimate" means that expectations cannot be a "sham designed to hide the employer's discriminatory purpose." *Addison v. CMH Homes, Inc.*, 47 F. Supp. 3d 404, 419–22 (D.S.C. 2014) (internal citations omitted).

---

[6] It is undisputed that Plaintiff was over 40 and a member of a protected class. (*See generally* Dkt. No. 36; Dkt. No. 44; Dkt. No. 47.)

Defendant contends that Plaintiff "cannot demonstrate that she was performing her job duties at a level that met T-Mobile's legitimate expectations at the time of her termination," and that "T-Mobile terminated [Plaintiff] because her actions violated T-Mobile's policies, specifically the Standards of Conduct Policy, Workplace Expectations Policy, and Code of Conduct." (Dkt. No. 36 at 16.) More specifically, Defendant states that Plaintiff violated company policy when conducting a training session for new hires. (*Id*. at 17.) Defendant explains:

> Ms. Colebrooke admitted to saying, "I'm black, I'm gay, and I'm a woman. You take me to HR; I'll take you right back," and understood how the statement could be interpreted by a new hire to mean that if they complained about Ms. Colebrooke, she would report them to Human Resources. (Colebrooke Depo., p. 175, ll. 14–23; Exhibit I). In her statement given during the investigation, Ms. Colebrooke admitted that making this statement during the new hire presentation was wrong. (Colebrooke Depo., p. 186, ll. 11–21; Exhibit I). Ms. Colebrooke also admitted to referring to the new hire as a "redbone." Janique Prioleau, who is African American, testified that the term "redbone" is a racially offensive name carrying a negative connotation and is based on the color of someone's skin. (Prioleau Depo., p. 7, l. 15 – p. 8, l. 11). . . . Ms. Colebrooke also admitted to touching the nape of [a] new hire's neck. (Colebrooke Depo., p. 177, ll. 4–16; Exhibit I). . . . The unprofessional and derogatory language Ms. Colebrooke used during the March 21, 2019 presentation, as well as her unwelcome and uninvited touching of a new hire, violated multiple T-Mobile policies in the Handbook and Code of Conduct, and were terminable offenses.

(*Id*. at 17–18.) Defendant contends that Plaintiff's conduct in this instance demonstrates that she was not performing her job duties at a level that met Defendant's legitimate expectations because her actions contravened the legitimate expectations Defendant set out in its policies. (*Id*. at 16.) Such expectations include that Defendant "expects all employees to behave in a professional manner that promotes efficiency, productivity, and cooperation," "expect[s] [employees] to maintain a positive work environment by communicating in a manner that is conducive to effective working relationships,"

"expects all employees . . . to exercise integrity, common sense, and good judgment." (*Id.*, citing to Dkt. No. 36-13.) In accordance with these expectations, Defendant's employee handbook prohibits unwanted touching and "demeaning or hostile . . . verbal communications, including off-hand comments, epithets, [and] jokes." (Dkt. No. 36-13 at 4.)[7]

In response to Defendant's assertions, Plaintiff contends that her conduct was misinterpreted and was not inappropriate. (Dkt. No. 44 at 21–22.) The record contains several statements about the incident at issue, including: a statement from Plaintiff, (Dkt. No. 44-5), statements from the new hires Plaintiff was training, (Dkt. No. 44-10), and a declaration from the new hire that Plaintiff touched, Shaunda Smith, (Dkt. No. 36-10). These statements confirm that, at minimum, Plaintiff stated: "I'm black, I'm gay, and I'm a woman. You take me to HR, I'll take you right back," touched the nape of Ms. Smith's neck after complimenting her haircut, and used the term "redbone." (*See generally* Dkt. No. 36-10; Dkt. No. 44-5; Dkt. No. 44-10.) Ms. Smith's declaration also confirms that she was "humiliated and devastated" by Plaintiff's conduct and that she quit her job because of it. (Dkt. No. 36-10 at 2–3.) Statements from the new hires confirm that some of them felt like Plaintiff's conduct was inappropriate. (Dkt. No. 44-10 at 1–10.)

---

[7] In addition, Defendant notes that Plaintiff struggled with her job responsibilities because "she did not understand how to utilize or implement Excel formulas effectively" and that Plaintiff failed to timely complete projects. (*Id.* at 3, citing to Dkt. No. 36-2.) Defendant also mentions that Plaintiff had trouble with "attendance and commitment" in her job performance. (*Id.* at 4, citing to Dkt. No. 36-1 and Dkt. No. 36-5.) In response, Plaintiff states that she was not hired to implement advanced Excel formulas and that she did not miss more than one deadline in completing her assignments. (Dkt. No. 44 at 14, citing to Dkt. No. 44-6.) She further states that she had no issues with performance or attendance until she began working at Defendant's North Charleston location. (*Id.*) To support these statements, Plaintiff points to a personal affidavit submitted in connection with her response to Defendant's Motion for Summary Judgment. (Dkt. No. 44-6.) However, as noted above, much of this affidavit is inadmissible and cannot be considered by the Court. (*See supra* at 4–7.) Regardless, Plaintiff cannot use such an affidavit to create a genuine issue of material fact regarding her ability to satisfy Defendant's legitimate expectations of her job performance. *See Nat'l Enterprises, Inc. v. Barnes*, 201 F.3d 331, 335 (4th Cir. 2000) (finding "self-serving affidavit" insufficient to defeat motion for summary judgment).

Plaintiff's own statement acknowledges that her conduct may have been offensive (although Plaintiff contends that was not her intent). (Dkt. No. 44-5 at 1–3.)

Based on the above, Plaintiff's conduct clearly violated Defendant's policies. As such, Plaintiff cannot make the requisite showing that she was performing her job duties at a level that met Defendant's legitimate expectations.[8] *See Wigger v. CVS Pharmacy*, No. 2:15-cv-01122-DCN-MGB, 2017 WL 9471790, at *7 (D.S.C. July 21, 2017), *adopted sub nom. Wigger v. CVS Pharmacy, Inc.*, 2017 WL 4296724 (D.S.C. Sept. 27, 2017) ("When determining whether an employee is meeting her employer's legitimate expectations, courts do not sit as a 'superpersonnel department weighing the prudence of employment decisions.'") (citing *Hill v. Se. Freight Lines, Inc.*, 877 F. Supp. 2d 375, 391 (M.D.N.C. 2012), *aff'd*, 523 F. App'x 213 (4th Cir. 2013)).

However, even assuming *arguendo* that Plaintiff could demonstrate satisfactory job performance, the undersigned finds that Plaintiff still fails to make a *prima facia* showing of age or race discrimination. With respect to the third prong, not every personnel decision constitutes an adverse employment action for purposes of a disparate treatment claim. *Hemphill v. United Parcel Serv., Inc.*, 975 F. Supp. 2d 548, 570 (D.S.C. 2013); *see also Thorn v. Sebelius*, 766 F. Supp. 2d 585, 599 (D. Md. 2011), *aff'd*, 465 F. App'x 274 (4th Cir. 2012) ("[N]ot everything that makes an employee unhappy is actionable adverse action."). "An adverse employment action is a discriminatory act which adversely affects the terms, conditions, or benefits of the plaintiff's employment."

---

[8] Even assuming that Plaintiff's conduct was misinterpreted by Defendant, Plaintiff still must show that Defendant did not genuinely believe that her conduct was inappropriate and in violation of its company policies. *See Addison v. CMH Homes, Inc.*, 47 F. Supp. 3d 404, 420 (D.S.C. 2014) (finding that even if defendant relied on unfair or inaccurate information about plaintiff's performance, plaintiff still failed to demonstrate that defendant-decisionmaker did not genuinely believe plaintiff failed to meet the company's legitimate expectations). As is more fully explained herein, Plaintiff fails to do so.

*James v. Booz–Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004); *see also Newman v. Giant Food, Inc.*, 187 F. Supp. 2d 524, 528 (D. Md. 2002), *aff'd sub nom. Skipper v. Giant Food Inc.*, 68 F. App'x 393 (4th Cir. 2003). Thus, to be cognizable, the adverse employment action must have a "significant detrimental effect" on the employee, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. *Peary v. Goss*, 365 F. Supp. 2d 713, 722 (E.D. Va. 2005), *aff'd*, 180 F. App'x 476 (4th Cir. 2006); *see also Blakney v. N. Carolina A&T State Univ.*, No. 1:17-cv-874, 2019 WL 1284006, at *14 (M.D.N.C. Mar. 20, 2019) (citing *Hoyle v. Freightliner*, *LLC*, 650 F.3d 321, 337 (4th Cir. 2011)). Although the plaintiff need not allege discharge or demotion to satisfy the third prong, less severe employment actions "must generally impact an employee's pay, potential for continued employment, or likelihood of promotion within the organization" in order to survive summary judgment. *See Blakney*, 2019 WL 1284006, at *15 (referencing *Boone v. Goldin*, 178 F.3d 253, 256–57 (4th Cir. 1999)).

In the instant case, the undersigned finds that, other than the termination of Plaintiff's employment, Plaintiff's allegations of discriminatory treatment fall short of adverse employment action. Plaintiff claims that Defendant (specifically, her supervisor, Nick Kyger) discriminated against her by: "not developing" her, not allowing her to apply for a "stretch assignment," and terminating her. (Dkt. No. 8 at 10–11; Dkt. No. 44 at 18–30.) First, Plaintiff's claims that her supervisor failed to develop her fall short of being an adverse action because Plaintiff fails to demonstrate any significant detriment to her employment as a result thereof. Plaintiff contends that she "witnessed Kyger provide

support to all other members of the team except for her" and that she "witnessed Kyger provide extensive development to the men on his team to include long conversations and permitting them to attend management meetings to develop their skills." (Dkt. No. 44 at 9–10.) She also claims that she asked Mr. Kyger to provide additional training and he refused. (*Id*. at 14, citing to Dkt. No. 44-6.) Plaintiff asserts that Mr. Kyger "gave [her] criticism and nothing more." (*Id*. at 27.)

Plaintiff does not, however, argue that Mr. Kyger's actions had any "significant detrimental effect" on her. *Peary*, 365 F. Supp. 2d at 722 (stating that an adverse employment action must have a "significant detrimental effect" on the employee, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits); *see also Cornelius v. City of Columbia*, 663 F. Supp. 2d 471, 477 (D.S.C. 2009), *aff'd sub nom. Cornelius v. Columbia, City of, S.C.*, 399 F. App'x 853 (4th Cir. 2010) (noting that "alleged unwarranted criticism" does not constitute an adverse employment action protected by federal law). Although Plaintiff suggests that she told management that she never would be promoted because she was "the wrong Age, Race, and Sex to be promoted," (Dkt. No. 8 at 6–7, 10), the record does not reflect that Plaintiff experienced any negative effects from Mr. Kyger's alleged failure to train. *See Blakney*, 2019 WL 1284006, at *15 ("[A] plaintiff need not allege discharge or demotion to satisfy the third prong, [but] less severe employment actions 'must generally impact an employee's pay, potential for continued employment, or likelihood of promotion within the organization' in order to survive summary judgment." (quoting *Boone*, 178 F.3d at 256–57)). Indeed, Plaintiff never sought a promotion or applied for any position other than "stretch assignments," which

cannot be considered promotional opportunities for the reasons discussed below. Further, Plaintiff has provided no evidence to demonstrate that Mr. Kyger's alleged failure to train her prevented her from advancing in her career. Rather, the record reflects that she had several leadership roles in the company and was making progress toward her goals. (Dkt. No. 36-2 at 10, 15–22.)

Moreover, the record shows that Mr. Kyger did, in fact, provide Plaintiff with training and resources throughout her employment. (*See generally* Dkt. No. 36-1; Dkt. No. 36-2.) For example, Mr. Kyger testified that he gave Plaintiff guidance and feedback in connection with her leadership roles.[9] (Dkt. No. 36-2 at 15–16.) Plaintiff testified that she received Microsoft Excel training courses after talking to Mr. Kyger. (Dkt. No. 36-1 at 37.) As such, even assuming that Plaintiff's allegations are true and that Mr. Kyger refused to provide her with certain training that she requested, Plaintiff simply cannot establish that any such denial was an adverse employment action for purposes of her discrimination claims.

Similarly, Plaintiff cannot show that her inability to apply for a certain stretch assignment had any detrimental effect on her employment. In fact, Plaintiff herself testified that her benefits and pay would not have changed if she secured the stretch assignment. (*Id*. at 23–24.) She testified that she "would have still been a senior analyst for business support in a role of [a] leadership training facilitator" if she received the stretch assignment position, but that she would "basically get to meet, . . . mingle . . .

---

[9] Again, Plaintiff attempts to create an issue of fact by contesting Mr. Kyger's statements in the personal affidavit she submitted to the Court in connection with her response to Defendant's Motion for Summary Judgment. (Dkt. No. 44-6.) However, as noted, Plaintiff cannot use this affidavit to create a genuine issue of material fact. *See Nat'l Enterprises, Inc. v. Barnes*, 201 F.3d 331, 335 (4th Cir. 2000) (finding "self-serving affidavit" insufficient to defeat motion for summary judgment). Regardless, Plaintiff's own testimony contradicts the assertions in her affidavit with respect to Mr. Kyger's support or lack thereof. (*See generally* Dkt. No. 36-1; Dkt. No. 44-6.)

[and] grow relationships." (*Id.*) Thus, Plaintiff's allegations regarding Mr. Kyger's refusal to sign-off on her application for a specific stretch assignment are simply insufficient to establish an adverse employment action. *James*, 368 F.3d at 375 ("An adverse employment action is a discriminatory act which adversely affects the terms, conditions, or benefits of the plaintiff's employment.").[10]

For these reasons, the undersigned finds that Plaintiff's discrimination claims ultimately boil down to the termination of her employment and therefore limits the undersigned's analysis under the fourth prong of Plaintiff's *prima facie* case to discharge. On this point, Defendant correctly notes that Plaintiff "does not make any argument in her Response in support of her claim for disparate treatment concerning her discharge." (Dkt. No. 47 at 8.) Consequently, Plaintiff has abandoned such claims by failing to argue the merits in her response brief. *See Jones v. Family Health Ctr., Inc.*, 323 F.Supp.2d 681, 690 (D.S.C. 2003) (noting that claim not addressed in opposition memorandum had been abandoned). However, even if Plaintiff had defended the merits of such claims against Defendant's Motion for Summary Judgment, the undersigned finds, for the reasons discussed below, that Plaintiff has failed to establish that her termination was the result of any sort of discrimination—age-based, race-based, or otherwise.

At the outset, the undersigned notes that Plaintiff has failed to demonstrate that she was treated differently than similarly situated employees who were younger and/or of a different race. *See Ferguson*, 18 F. Supp. 3d at 719 (describing the fourth element of a *prima facie* case of race discrimination); *Wakefield-Brace*, 2017 WL 9286975, at *8

---

[10] Further, Mr. Kyger signed off on Plaintiff's applications for other stretch assignments—both before and after denying Plaintiff's request to apply for the stretch assignment at issue here. (Dkt. No. 36-2 at 18; Dkt. No. 36-6 at 2.) In one instance, Mr. Kyger was the one who brought the stretch assignment to Plaintiff's attention and suggested that she apply. (Dkt. No. 36-6 at 2.)

(describing the same in ADEA context). Although Plaintiff is not required as a matter of law to identify a similarly-situated comparator to satisfy the fourth prong of his *prima facie* case,[11] Plaintiff bases her allegations of discrimination largely on the contention that Defendant failed to discipline younger employees for actions that should have been terminable offenses and that "others who committed acts that violated the policies and procedures of Defendant were not terminated." (Dkt. No. 8 at 10–13.) "When a plaintiff bases her discrimination claim on a similarly situated comparator, it is the plaintiff's 'task to demonstrate that the comparator is indeed similarly situated.'" *Davis v. Centex Homes*, No. 4:09-cv-830-RBH-SVH, 2011 WL 1525764, at *3 (D.S.C. Apr. 1, 2011), *adopted sub nom. Davis v. Centex Int'l II LLC*, 2011 WL 1526928 (D.S.C. Apr. 20, 2011) (internal citations omitted). In doing so, Plaintiff must demonstrate that she is similar in all relevant respects to her alleged comparators. *Hurst v. D.C.*, 681 F. App'x 186, 191 (4th Cir. 2017). Such a showing includes evidence that the individuals dealt with the same supervisor, were subject to the same standards and engaged in the same conduct "without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992).

  In support of her claim that she was discriminatorily discharged, Plaintiff identifies several comparators including: Courtney Wilson, Kialiea Brown, Marvin Jones, and Chymeka Scott.[12] (Dkt. No. 36-1 at 64–73.) With respect to Courtney Wilson,

---

[11] *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 545 (4th Cir. 2003).

[12] Although Plaintiff identifies other comparators, such as Sean Mannarino, Cecilia Holiday, and Christina Waltz, she compares herself to them for purposes of establishing that Mr. Kyger failed to develop her. (Dkt. No. 36-1 at 67–73.) Because Plaintiff has failed to establish that Mr. Kyger's alleged failure to develop her

Plaintiff alleges that Ms. Wilson was promoted after sleeping with one of her employees. (*Id*. at 64.) According to Plaintiff, Ms. Wilson is in her thirties and is black. (*Id*.) Plaintiff alleges that Kialiea Brown was moved to a different department after "sleeping with someone who worked under her." (*Id*. at 66.) Plaintiff asserts that Ms. Brown is also in her thirties and is also black. (*Id*.) As for Marvin Jones, Plaintiff alleges that he was "moved from another state to Charleston after he was accused of sexual acts with the other coaches and managers in the site he was in." (*Id*. at 71.) Finally, Plaintiff alleges that Chymeka Scott was demoted for fighting with one of her representatives. (*Id*. at 70.) Plaintiff does not specify the ages of Ms. Scott and Mr. Jones, but she notes that they are both black. (*Id*. at 70.)

As a threshold issue, the undersigned notes that all of these comparators are within Plaintiff's protected race class. (*Id*. at 64–73.) As such, Plaintiff cannot use them to support her race discrimination claims. It is unclear whether all of Plaintiff's comparators are outside of her protected age class. Nonetheless, Plaintiff's proffered comparators did not engage in conduct analogous to Plaintiff's and the record therefore cannot support her claims of discrimination on their actions alone. (*Id*.)

First, the record does not demonstrate that any of Plaintiff's proffered comparators served in the same role as Plaintiff or shared the same responsibilities. *See Sherman v. Westinghouse Savannah River Co., LLP*, No. 1:00-1649-26AJ, 2004 WL 5578724, at *3 (D.S.C. Sept. 29, 2004), *aff'd sub nom. Sherman v. Westinghouse Savannah River Co.*, 263 F. App'x 357 (4th Cir. 2008) (finding no true comparators where the identified employees had different job responsibilities). Even assuming that

---

constitutes an adverse employment action, the undersigned has not considered these comparisons. (*See supra* at 15–19.)

these comparators did serve in the same role as Plaintiff or share the same responsibilities, Plaintiff's conduct is still distinguishable from that displayed by such comparators. According to Plaintiff, Ms. Wilson and Ms. Brown slept with their employees, Mr. Jones had "sexual acts" with coworkers, and Ms. Scott fought with a representative. (*See supra* at 20–21; Dkt. No. 36-1 at 64–73.) By contrast, Plaintiff allegedly threatened new hires, made a racial epithet, and inappropriately touched a new hire during training. (*See supra* at 13; Dkt. No. 36 at 17–18; Dkt. No. 44-5.)

While the Court makes no determination as to which behaviors are more severe or deserving of punishment, the undersigned does find, from an objective standpoint, that the misconduct levied against each individual is sufficiently different to defeat Plaintiff's comparator argument. *See*, *e.g.*, *Klicka v. The Diocese of Charleston*, No. 3:3:05-1320, 2006 WL 2927653, at *8 (D.S.C. Oct. 12, 2006) (explaining that the plaintiff must show that the comparator's misconduct was "nearly identical to the plaintiff's in order to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges") (internal citations omitted); *Duggan v. Sisters of Charity Providence Hosps.*, 663 F. Supp. 2d 456, 468 (D.S.C. 2009) (noting that coworkers were not valid comparators where they did not engage in the same misconduct as plaintiff).

Other than her own speculation, Plaintiff does not offer any other evidence or circumstances that would give rise to an inference of discrimination under the fourth prong of her *prima facie* case. In fact, Plaintiff's discrimination claim is fatally undermined by her own conjecture, which suggests that the proffered comparators likely received preferential treatment "because of their rank, [and] because of the people that they know," not because of their age or race. (Dkt. No. 36-1 at 71.) Accordingly, even

assuming that Plaintiff's proffered comparators were treated more favorably than Plaintiff, any disparate treatment sounds more in unfair employment practices than in discriminatory treatment. *See Mayers v. Shaw Indus.*, No. 3:09-cv-2635-MBS-JRM, 2012 WL 1067663, at *4–6 (D.S.C. Mar. 29, 2012) (finding that plaintiff failed to establish the fourth element of his *prima facie* case where the disparate treatment was based on favoritism, rather than unlawful discrimination). Thus, the undersigned finds that Plaintiff has failed to show that she was discharged under circumstances that raise a reasonable inference of unlawful discrimination.

However, even if Plaintiff could make a *prima facie* showing of discrimination, she still fails to raise a genuine question of material fact as to whether Defendant's legitimate, nondiscriminatory reason for terminating her employment was pretext for discrimination. Plaintiff fails to present any evidence from which a reasonable jury could find that Defendant did not believe that Plaintiff's conduct during her training presentation was a sufficient reason for termination. Plaintiff simply argues that Defendant misunderstood her statements and actions. (Dkt. No. 44 at 20–23.)[13] While Plaintiff may not agree with Defendant's interpretation of her actions, Defendant's depiction of Plaintiff's conduct resulted from a thorough investigation into the incident, (Dkt. No. 36-1 at 51–55; Dkt. No. 36-9 at 2–4; Dkt. No. 36-11 at 5–12; Dkt. No. 44-5 at 1–3; Dkt. No. 44-10 at 1–19), and the record confirms that Defendant's conclusion that

---

[13] Plaintiff seems to argue that Ms. Smith, the woman whose nape Plaintiff touched during the new hire training, and Ms. Brown, one of the women whom Plaintiff uses as a comparator, conspired against Plaintiff because she is homosexual. Specifically, Plaintiff asserts that Ms. Brown and Ms. Smith are "church sisters" and are prejudiced against gay individuals. (Dkt. No. 44 at 22.) However, there is nothing in the record that suggests bias on the part of Ms. Smith or Ms. Brown. Further, nothing in the record indicates that Defendant suspected that Ms. Smith was prejudiced against Plaintiff in any way, or that any of her statements regarding Plaintiff's actions during the new hire training were untrue. Regardless, Plaintiff's sex discrimination claim was dismissed on May 7, 2020, (Dkt. No. 30), and any allegations of sex discrimination are therefore outside the scope of this lawsuit.

Plaintiff's conduct violated its policies was not an unreasonable one, even when considering the facts in the light most favorable to Plaintiff. (*See generally* Dkt. No. 36-13; Dkt. No. 36-14; Dkt. No. 44-5; Dkt. No. 44-10.)

Nonetheless, the fairness of Plaintiff's termination is not relevant to the pretext inquiry. Indeed, "[an employer's] failure to adhere to common notions of fairness in the termination process is not probative of discriminatory intent and cannot show pretext." *Addison*, 47 F. Supp. 3d at 421; *see also Duggan*, 663 F. Supp. 2d at 470 n.6 (rejecting plaintiff's attempt to establish pretext by pointing out that the defendant rushed to judgment to terminate him and failed to interview witnesses or the plaintiff himself). Federal discrimination statutes are not vehicles for "substituting the judgment of a court for that of the employer." *Thompson*, 2014 WL 5369775, at *12 (citing *Jiminez v. Mary Washington College*, 57 F.3d 369, 377 (4th Cir. 1995); *see also Malghan v. Evans*, 118 F. App'x 731 (4th Cir. 2004) ("[T]he law does not require an employer to make, in the first instance, employment choices that are wise, rational, or even well-considered, as long as they are nondiscriminatory.") Thus, even if Defendant misinterpreted Plaintiff's conduct, it is not this Court's place to decide whether Defendant's reasoning "was wise, fair, or even correct, ultimately, so long as it truly was the reason for [Plaintiff's] termination." *Hawkins v. Pepsico*, 203 F.3d 274, 279 (4th Cir. 2000) (citing *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998)). Because Plaintiff has failed to present evidence that intentional discrimination was the "but for" reason for her discharge, the undersigned is constrained to recommend that the Court grant Defendant's Motion for Summary Judgment (Dkt. No. 36) as to Plaintiff's claims for age discrimination in violation of the ADEA and race discrimination in violation of Title VII and Section 1983.

### B.    Retaliation in Violation of the ADEA and Title VII

The ADEA and Title VII make it unlawful for an employer to retaliate against an employee or job applicant because that individual opposed any practice made unlawful under the respective statute, or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under the respective statute. 29 U.S.C. § 623(d) (ADEA); 42 U.S.C. § 2000e–3(a) (Title VII). When, as here, the plaintiff lacks direct evidence of retaliation, she must satisfy the three-step burden-shifting framework under *McDonnell Douglas* to prevail on her claim of retaliation. *Laber v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006) (ADEA); *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 249–50 (4th Cir. 2015) (Title VII).

The elements of a *prima facie* retaliation claim are: (1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action. *See Williams v. Horry-Georgetown Technical College*, 26 F. Supp. 3d 519, 528 (D.S.C. 2014) (ADEA); *Mackey v. Shalala*, 360 F.3d 463, 469 (4th Cir. 2004) (Title VII). If the plaintiff establishes a *prima facie* claim of retaliation, the burden shifts to the defendant to show that its purportedly retaliatory action was in fact the result of a legitimate non-retaliatory reason. *Laber*, 438 F.3d at 432 (ADEA); *Foster*, 787 F.3d at 250 (Title VII). The burden then shifts back to the plaintiff to rebut the defendant's evidence by demonstrating that the proffered reason was mere pretext for retaliation. *Laber*, 438 F.3d at 432 (ADEA); *Foster*, 787 F.3d at 250 (Title VII).

Defendant first argues that Plaintiff cannot establish a *prima facie* claim of retaliation because she did not engage in a protected activity. (Dkt. No. 36 at 28.)

Protected activity is conduct by an employee which resists or confronts "an employment practice made unlawful" by a federal discrimination statute. *See, e.g.*, *Sutton v. Vilsack*, No. 2:12-cv-01386-DCN, 2014 WL 4199163, at *8, n.10 (D.S.C. Aug. 20, 2014). While the Fourth Circuit has "articulated an expansive view of what constitutes oppositional conduct" for purposes of retaliation, federal employment laws do not prohibit private employers from retaliating against an employee based on opposition to discriminatory practices that are outside the scope of the ADEA or Title VII. *Stennis v. Bowie State Univ.*, 716 F. App'x 164, 167 (4th Cir. 2017). In other words, Plaintiff must allege that she opposed discrimination based on a protected characteristic in order to show actionable protected activity. *Hemphill*, 975 F. Supp. 2d at 561.

In the instant case, Plaintiff complained to Isha Lo about her supervisor, Mr. Kyger, stating that she felt he was holding her back.[14] (Dkt. No. 36-8 at 2–4.) Ms. Lo's declaration states that Plaintiff did not mention discrimination or retaliation. (*Id.*) However, Plaintiff testified that she specifically told Ms. Lo that she was being discriminated against due to her race, sex, and age, and that she was being retaliated against for an earlier conversation she had with human resources.[15] (Dkt. No. 36-1 at 41–44.) Viewing the facts in the light most favorable to Plaintiff, the undersigned presumes that Plaintiff complained of discrimination and retaliation during her conversation with Ms. Lo and therefore concludes that Plaintiff engaged in protected

---

[14] Plaintiff also complained about Mr. Kyger to Ricardo Moyers and Janique Prioleau. (Dkt. No. 36-3 at 9–10.) It is undisputed that Plaintiff never mentioned discrimination or retaliation in those conversations. (*See generally* Dkt. No. 36; Dkt. No. 44; Dkt. No. 47.) Moreover, Plaintiff filed her charge of discrimination with the Equal Employment Opportunity Commission *after* she was terminated. (Dkt. No. 44-1 at 1.)

[15] More specifically, Plaintiff had a conversation with Ricardo Moyers, who is an employee in Defendant's human resources department. (Dkt. No. 36-3 at 9–10.) As noted, Plaintiff never mentioned discrimination or retaliation in her conversation with Mr. Moyers, so her complaints to him cannot be considered protected activity. (*See supra* at 26, n.14.)

activity. *Hunt*, 526 U.S. at 552 (noting that "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor'" when evaluating a motion for summary judgment (quoting *Anderson*, 477 U.S. at 255)); *Bowman v. Holopack Intern. Corp.*, No. 3:06-cv-1648-CMC, 2007 WL 4481130, at *14 (D.S.C. Dec. 19, 2007) ("[T]he opposition clause encompasses informal protests, such as voicing complaints to superiors or protests using an employer's grievance procedures.").

Because it is undisputed that Plaintiff suffered an adverse employment action when she was terminated, (*see generally* Dkt. No. 36; Dkt. No. 44; Dkt. No. 47), the undersigned turns to the causation element of Plaintiff's *prima facie* case. *See Williams*, 26 F. Supp. 3d at 528 (ADEA); *Mackey,* 360 F.3d at 469 (Title VII). Plaintiff argues that the temporal proximity between her complaint to Ms. Lo and her termination establishes the requisite causal link for her *prima facie* case of retaliation. (Dkt. No. 44 at 29–30.) Plaintiff states that "[a]fter [her] complaint[,] she was terminated within a month." (*Id.*) In response, Defendant contends that "[t]emporal proximity alone is not enough to show that protected activity was a 'but for' cause of an adverse employment action." (Dkt. No. 47 at 9.)

The Fourth Circuit has observed that in order for a temporal relationship to support a reasonable inference of retaliatory causation, the temporal relationship must be "very close." *Pascual v. Lowe's Home Ctrs.*, 193 Fed. App'x 229, 233 (4th Cir. 2006) (quoting *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). Although there is no bright-line rule for determining when a temporal relationship is "very close," the Fourth Circuit has held that three months between a plaintiff's protected activity and a

defendant's retaliatory act is too long to give rise to an inference of causality. *Id.* (three-to-four-month period too long to establish causation). The Fourth Circuit has also determined that two months is "sufficiently long so as to weaken significantly the inference of causation between the two events." *King*, 328 F.3d at 151 n.5; *see also Horne v. Reznick Fedder & Silverman*, 154 Fed. App'x. 361, 364 (4th Cir. 2005). However, "[o]ne month is a sufficiently short time to establish a causal link by temporal proximity alone." *Lowman v. Maryland Aviation Admin.*, No. CV JKB-18-1146, 2019 WL 133267, at *8 (D. Md. Jan. 8, 2019); *see also Foster*, 787 F.3d at 253 (holding that complaints of discrimination one month before termination was sufficient to create jury question regarding causation prong of *prima facie* case of retaliation).

Here, it is undisputed that Plaintiff was terminated "within a month" of her complaint to Ms. Lo. (Dkt. No. 36 at 5, 29; Dkt. No. 36-1 at 39; Dkt. No. 44 at 29.) Thus, there is a "very close" temporal relationship between her protected activity and her termination. *See*, *e.g.*, *Fleming v. S.C. Dep't of Corrs.*, 952 F. Supp. 283, 288 (D.S.C. 1996) (holding that plaintiff's transfer one month after engaging in protected activity was "strongly suggestive" of retaliation); *Crosby v. United Parcel Serv., Inc.*, No. 8:12-cv-00681-JM, 2014 WL 1278009, at *15 (D.S.C. Mar. 27, 2014) (determining that "one month temporal proximity between Plaintiff's complaint and the cutting of his delivery run satisfies the causation element of a prima facie case of retaliation"); *Wilkes v. Argueta*, No. 1:16-cv-260, 2017 WL 1215749, at *5 (M.D.N.C. Mar. 31, 2017) (finding that plaintiff had "satisfied the third element of her retaliation claim by sufficiently alleging close temporal proximity between her protected activity and the subsequent adverse employment action" where she filed a complaint less than one month prior to

being terminated). Based on the above, Plaintiff has established the requisite causal connection between her protected complaint to Ms. Lo and her subsequent termination. As such, Plaintiff has established a *prima facie* case of retaliation.[16]

Nonetheless, Plaintiff's claim must fail because she cannot show pretext. As is more fully described above, Defendant has proffered a legitimate, nondiscriminatory reason for terminating Plaintiff's employment. (*See supra* at 23–24.) The burden therefore shifts back to Plaintiff to raise a genuine question of material fact as to whether Defendant's proffered reason was pretextual. *Laber*, 438 F.3d at 432 (ADEA); *Foster*, 787 F.3d at 250 (Title VII). However, Plaintiff cannot sustain this burden. (Dkt. No. 44 at 29–30.)

More specifically, Plaintiff does not present any evidence from which a reasonable jury could conclude that Plaintiff's termination was retaliatory. (*See generally* Dkt. No. 44.) In fact, Defendant correctly notes that nothing in the record suggests that those responsible for the decision to terminate Plaintiff even knew of her complaint to Ms. Lo prior to her termination. (Dkt. No. 36 at 30; Dkt. No. 36-2 at 22–25; Dkt. No. 36-8 at 3; Dkt. No. 36-11 at 3–16; Dkt. No. 36-12 at 3–11; Dkt. No. 44-7 at 6–9.) Because Plaintiff has failed to demonstrate that retaliation was the "but for" reason for her discharge, the undersigned recommends that the Court grant Defendant's Motion for Summary Judgment (Dkt. No. 36) on this claim.

---

[16] While the undersigned acknowledges Defendant's contention that "[t]emporal proximity alone is not enough to show that protected activity was a 'but for' cause of an adverse employment action," (Dkt. No. 47 at 9), Plaintiff is not required to establish "but for" causation at the *prima facie* stage. *See Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 251 (4th Cir. 2015) (holding that plaintiff need not establish "but for" causation until pretext stage of burden-shifting framework); *see also Strothers v. Laurel*, 895 F.3d 317, 335 (4th Cir. 2018) (noting that establishing causation "is not an onerous burden" at the *prima facie* stage).

## CONCLUSION

Based on the foregoing, the undersigned **recommends** that Defendant's Motion for Summary Judgment (Dkt. No. 36) be **granted** and **denies** Defendant's Motion to Strike (Dkt. No. 46).

**IT IS SO RECOMMENDED.**

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

May 26, 2021
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).